OPINION
{¶ 1} Defendant-appellant, Kristy Lyons nka Merril, appeals the Judgment Entry of the Lake County Court of Common Pleas, Juvenile Division, overruling her objections to the Magistrate's Decision and awarding plaintiff-appellee, Brian C. Waszkowski, *Page 2 
visitation and companionship rights with respect to her son, Mason. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Waszkowski and Merril were previously in a romantic relationship. On January 23, 2003, during the course of their relationship, Mason was born. At some point, the relationship terminated and Merril initiated support proceedings with the Lake County Department of Job and Family Services, identifying Waszkowski as Mason's father.
 {¶ 3} In October 2006, it was demonstrated through genetic testing that Waszkowski is not Mason's biological father.
 {¶ 4} On November 2, 2006, Waszkowski filed a Motion for Companionship or Visitation Rights Pursuant to R.C. § 3109.051.
 {¶ 5} On November 17, 2006, Merril filed an Emergency Motion to Relocate, advising the juvenile court that she would be marrying her fiancÉ, Dennis Merril, on November 21, and relocating with Mason and Dennis to Jackson, Wyoming, on November 25. Merril further indicated that she did not believe that further contact between Waszkowski and Mason would be in Mason's best interests.
 {¶ 6} Prior to the hearing on Waszkowski's Motion, the magistrate conducted an in camera interview with Mason and the parties underwent a psychological evaluation conducted by Dr. Sandra McPherson.
 {¶ 7} On December 5 and 6, 2007, the hearing was held on Waszkowski's Motion for Companionship or Visitation. At the hearing, Dr. McPherson testified that Waszkowski occupies the position of a "psychological father" in Mason's life and that it is in Mason's best interest that the relationship continue. It was also the *Page 3 
recommendation of Mason's guardian ad litem that continued contact with Waszkowski was in his best interest.
 {¶ 8} On December 11, 2007, the magistrate issued her Decision, in which she determined that "a positive, loving, parent-child relationship" exists between Waszkowski and Mason and that terminating this relationship was not in Mason's best interest. The magistrate awarded Waszkowski companionship with Mason in Ohio three times a year, with Waszkowski being responsible for all transportation costs, and the right to speak with Mason regularly by telephone.
 {¶ 9} Merril filed objections to the Magistrate's Decision but did not file a transcript of the proceedings.
 {¶ 10} On April 18, 2008, the juvenile court entered a Judgment Entry overruling the objections. The court found that the magistrate had duly considered all the relevant issues raised by Merril and "put a great deal of thought and deliberation into crafting a visitation schedule that would provide some reasonable companionship time between father and his son, both of whom have a right and entitlement to such companionship." Although the court recognized maintaining visitation placed some "burden" on Merril, "she * * * is the person who created the situation and who now must make some sacrifices to ensure that the others involved are not deprived of their rights."
 {¶ 11} On May 15, 2008, Merril filed her Notice of Appeal and raised the following assignments of error:
 {¶ 12} "[1.] It was an Abuse of Discretion for the Trial Court to Grant Visitation to a Non-Parent when such visitation is against the custodial parent's wishes, creates *Page 4 
great hardship for both mother and child, an is against the manifest weight of the evidence presented at trial."
 {¶ 13} "[2.] The Trial Court Erred in Granting Substantial Visitation time to Appellee where genetic testing has determined he is not the biological father of the child and where the Court was bound by O.R.C. 3111.09(D) [to] enter judgment that the Appellee is not the father of the child."
 {¶ 14} The standard of review applicable to a court's judgment regarding companionship and visitation is abuse of discretion, the standard generally applicable in domestic relations matters. In reNewsome, 11th Dist. No. 2007-A-0030, 2008-Ohio-2132, at ¶ 22, citingBooth v. Booth (1989), 44 Ohio St.3d 142, 144; Appleby v. Appleby
(1986), 24 Ohio St.3d 39, 41 ("[w]hile custody and visitation are obviously related, a court's discretion regarding visitation is broader") (citation omitted).
 {¶ 15} "In a * * * child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to * * * any other person other than a parent, if * * * [t]he court determines that the granting of the companionship or visitation rights is in the best interest of the child." R.C. 3109.051(B)(1)(c).
 {¶ 16} In her first assignment of error, Merril asserts that the juvenile court's conclusion that it is in Mason's best interests to have contact with Waszkowski is against the manifest weight of the evidence. Consideration of this assignment of error, however, is precluded by Merril's failure to file a transcript of the proceedings before the magistrate.
 {¶ 17} Ohio's Rules of Appellate Procedure provide as follows: "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or *Page 5 
is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion." App. R. 9(B). This Rule has been construed by this court, as by virtually every other Ohio appellate court, to mean that the "failure [to file a transcript of the magistrate hearings or a statement of the evidence] precludes [an] appellant from contesting the lower court's findings or conclusions as being unsupported by the evidence or contrary to the weight of the evidence." Savage v. Savage, 11th Dist. Nos. 2004-L-024 and 2004-L-040, 2004-Ohio-6341, at ¶ 34; Maynard v.Landon, 5th Dist. No. 2006-CA-0015, 2007-Ohio-2813, at ¶ 22, citingHartt v. Munobe, 67 Ohio St.3d 3, 7, 1993-Ohio-177 ("[t]he failure to file a complete transcript or its equivalent is generally fatal to an appeal based on the manifest weight of the evidence").
 {¶ 18} Merril attempts to argue the weight of the evidence based solely on the findings made in the Magistrate's Decision. Such an analysis is unavailing. It is improper inasmuch as the Magistrate's Decision does reproduce, or purport to reproduce, all the evidence presented in two days of hearing or the evidence gained during the magistrate's in camera interview with Mason. Moreover, the Magistrate's Decision on its face contains evidence supporting the decision. Two licensed psychologists and Mason's guardian ad litem testified that visitation with Waszkowski was in Mason's best interest. There is nothing improper about the Magistrate's Decision as a matter of law.Weiskopf Industries Corp. v. Kosky, 11th Dist. No. 91-L-125, 1992 Ohio App. LEXIS 3448, at *3 (where the appellant fails to supply "the relevant portions of the transcript as mandated by App. R. 9 * * *, this court is * * * must affirm unless the trial court's decision is improper as a matter of law"). *Page 6 
 {¶ 19} The first assignment of error is without merit.
 {¶ 20} In the second assignment of error, Merril argues the juvenile court was required, pursuant to R.C. 3111.09(D), to enter judgment that Waszkowski is not Mason's biological father and, had the court done so, Waszkowski would lack standing to seek visitation. We disagree.
 {¶ 21} The juvenile court has on several occasions recognized, through judgment entries, that Waszkowski is not Mason's biological father. On January 22, 2007, the court entered a Judgment Entry acknowledging the receipt of genetic tests indicating that Waszkowski is not Mason's biological father. Likewise, in the December 11, 2007 Magistrate's Decision, the magistrate noted "[t]he results of the [genetic] testing were that the probability that [Waszkowski] was the father of the minor child Mason was zero."
 {¶ 22} Merril is also incorrect that Waszkowski lacks standing to seek companionship and visitation with Mason merely because he is not the biological father. In May 2006, Waszkowski filed his Complaint for Parenting Time pursuant to R.C. 3109.12. On October 11, 2006, Waszkowski was granted, by Agreed, Temporary Judgment Entry, parenting time with Mason.
 {¶ 23} The Revised Code provides that, when a person is relieved of a paternity or support order, and "the person who is relieved * * * has been granted parenting time rights pursuant to an order issued under section 3109.051 [3109.05.1] or 3109.12 of the Revised Code ***, the court shall determine whether the order granting those rights should be terminated, modified, or continued." R.C. 3119.964(A). *Page 7 
 {¶ 24} Additionally, the plain language of R.C. 3109.051(B)(1)(c) demonstrates that "any other person," i.e. other than the biological parents, may be entitled to visitation if the juvenile court deems such visitation to be in the child's best interest.
 {¶ 25} Merril relies upon the case of Sherburn v. Reichert (1994),97 Ohio App.3d 120, for the proposition that a putative father lacks standing to seek visitation once he is found not to be the child's biological father. Id. at 124. Sherburn is distinguishable factually. In that case, the court reasoned that "the two methods for a father to secure companionship rights with an illegitimate child [are] to either acknowledge his paternity or have his paternity determined in an action pursuant to R.C. Chapter 3111." Id. Since the father inSherburn never acknowledged paternity of the child, the court concluded there was no statutory basis for awarding visitation with the child. Id. In the present case, Waszkowski did acknowledge paternity of Mason by filing an affidavit with the Central Paternity Registry and was under an administrative support order. Thus, Waszkowski had standing to seek companionship and visitation.
 {¶ 26} Nor does Waszkowski's standing dissolve upon receipt of the genetic testing. As noted above, persons not biologically related to a child may be awarded companionship and visitation under the Revised Code. Based on these statutes, Ohio courts have awarded step-parents visitation with step-children. Shannon v. Shannon (1997),122 Ohio App.3d 346, 349 ("R.C. 3109.051 permits the court to grant visitation to any person having an interest in the welfare of the child if such visitation is in the child's best interest"); Hutton v. Hutton (1984),21 Ohio App.3d 26, 28 ("R.C. 3109.05 grants the trial court discretion to award visitation rights to non-parents"); cf. Middleton *Page 8 v. Johnson (S.C.App. 2006), 633 S.E.2d 162, 167-170 (discussing the application of the "psychological parent" doctrine in various jurisdictions as a basis for visitation).
 {¶ 27} The dissent's reliance on the case of Liston v. Pyles, 10th Dist. No. 97APF01-137, 1997 Ohio App. LEXIS 3627, does not alter the outcome. In Liston, the court held that a claim for visitation could not be maintained when the underlying support claim was not "proper." That case is distinguishable. Liston involved a dispute between two homosexual partners. When the partners separated, the one partner filed a complaint for support and visitation against the other, deemed the "biological" parent. The court dismissed the underlying support complaint on the grounds that the appellee did not have standing to initiate a complaint for support, not being the child's adoptive or biological parent. Id. at *8. In the present case, Mason's biological mother initiated legal proceedings by seeking support. In contrast toListon, the underlying action in the present case was properly initiated. Brian's claim for visitation should not be dismissed simply because the underlying support action failed.
 {¶ 28} The juvenile court considered Mason's best interests, which are the "paramount consideration" of these proceedings. Kamm v Kamm,67 Ohio St.3d 174, 178, 1993-Ohio-60. As the juvenile court correctly noted, the issue is not simply Waszkowski's right to companionship or Merril's right to deny him such, but Mason's right to continue the relationship with the man who has been the only father figure in his life. Revised Code 3119.964(A) expressly allows for a person to enjoy parenting time with a child even after it has been scientifically determined that they cannot be the child's biological parent. *Page 9 
 {¶ 29} The juvenile court's judgment does not force Merrill to share companionship of Mason with a legal stranger not of her choosing. The court correctly noted that Merril "is the person who created this situation" by choosing to allow Mason and Waszkowski to develop a parent-child relationship. That relationship is a fact of the present case. As described by Dr. McPherson: "[Mason] is a child who arrived on earth and was greeted by two parenting persons; a biological mother and a psychological father, who, with his family, played a major part in this child's life, including significant and up to half time care taking at different points. When it was convenient for the mother, this service and pattern was acceptable. Now that [the] mother has an opportunity to establish a more desirable lifestyle, she does not even consider what kind of loss she is visiting upon her son. * * * [I]n spite of her efforts to substitute one father for another, the child, as would be predicted from what is well known about child development and human beings in general, retains a primary affection for the first father in his life."
 {¶ 30} The second assignment of error is without merit.
 {¶ 31} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, awarding Waszkowski companionship and visitations rights with respect to Mason, is affirmed. Costs to be taxed against the appellant.
CYNTHIA WESTCOTT RICE, J., concurs,
 COLLEEN MARY OTOOLE, J., dissents with a Dissenting Opinion. *Page 10