[Cite as *Varney v. Allen*, 2017-Ohio-1409.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

HEATHER N. VARNEY, et al.,      :

    Plaintiffs-Appellants,      :      Case No.   16CA3543

    vs.      :

BRIAN M. ALLEN, et al.,      :      DECISION AND JUDGMENT ENTRY

    Defendants-Appellees.      :

_____

APPEARANCES:

Aaron M. McHenry, Chillicothe, Ohio, for appellants.

Stephen K. Sesser, Chillicothe, Ohio, for appellee.

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 4-5-17
ABELE, J.

{¶ 1}   This is an appeal from a Ross County Common Pleas Court, Juvenile Division, judgment that dismissed the custody complaint filed by Heather N. Varney and Derric A. Varney, plaintiffs below and appellants herein.   Appellants assign the following error for review:

> "THE TRIAL COURT ERRED IN FINDING THAT
> APPELLANTS' COMPLAINT WAS A COLLATERAL
> ATTACK ON A PRIOR JUDGMENT."

{¶ 2}   The case at bar involves two separate actions involving the custody of a three-year-old child whose biological mother passed away after the trial court had designated her the child's residential parent.   Appellants are the child's maternal aunt and uncle.   Jody

K. Woods, defendant below and appellee herein, is the child's maternal grandmother.

## CASE NUMBER 2013C0139[1]

{¶ 3}   In 2013, the child's biological parents entered into a shared parenting plan, and the trial court designated the mother the residential parent.   In 2014, a notice of suggestion of death was filed concerning the mother.

{¶ 4}   In January 2015, appellee filed a "multi branch motion"[2] and requested ex parte emergency temporary custody of the child.   The magistrate granted appellee temporary custody of the child and set the matter for a hearing.

{¶ 5}   In February 2015, appellants filed a motion to intervene and a complaint that requested custody of the child.   The magistrate denied appellants' motion to intervene. Appellants, however, objected to the magistrate's decision.   The trial court overruled their objections.

{¶ 6}   In October 2016, the trial court granted appellee legal custody of the child.

## CASE NUMBER 2015C0160

{¶ 7}   On June 15, 2015, appellants filed a complaint that requested the trial court to designate them the child's legal custodians and residential parents.   Appellants later

---

[1] We point out that the record transmitted on appeal does not contain any documents filed in Case Number 2013C0139.   Instead, we have gathered these facts from the docket listing available on the Ross County Clerk of Court's website.   Thus, with respect to Case Number 2013C0139, we recite only the facts readily available on the Clerk of Court's website and the facts that the parties do not dispute.   *See In re Helfrich,* 5th Dist. Licking No. 13CA20, 2014–Ohio–1933, ¶35 (stating that both trial courts and appellate courts can take judicial notice of filings readily accessible from a court's website)

[2] The online docket listing does not indicate what appellee requested in the "multi branch motion."   Appellants and appellee assert that appellee's motion sought to intervene and requested that the court grant her legal custody of the child.

amended their complaint to include appellee as a defendant.

{¶ 8}   Appellee subsequently filed a motion to dismiss appellants' complaint and asserted that the complaint constitutes an improper collateral attack on the trial court's judgment in the original custody action.   Appellee pointed out that appellants previously sought to intervene in the custody matter pending between the child's father and appellee, that the court denied their motion, and they did not appeal.   Appellee therefore asserted that appellants could not collaterally attack the court's decision in the original custody matter by filing a separate complaint for custody of the child.

{¶ 9}   In response, appellants did not dispute that they previously submitted themselves to the trial court's jurisdiction.   Instead, they claimed that their complaint did not constitute an improper collateral attack because the trial court's denial of their motion to intervene deprived them of an opportunity to be heard concerning the merits of the request for custody of the child.   Appellants also asserted that the trial court had not issued a final judgment in the original custody action, and thus, the collateral attack doctrine did not apply.

{¶ 10} On March 3, 2016, the magistrate determined that appellants' custody complaint constituted an improper collateral attack on the court's judgment.   That same day, the trial court dismissed appellants' complaint.   The court found that (1) appellants previously sought to intervene in a custody action involving the child's father and appellee, (2) the court denied their motion to intervene, and (3) appellants did not appeal.   The court concluded that appellants' separate action that requested custody of the child constitutes an improper collateral attack on the court's decision that denied appellants' motion to intervene.

{¶ 11} On March 16, 2016, appellants objected to the magistrate's decision, but the

trial court overruled appellants' objections to the magistrate's decision.   This appeal followed.[3]

{¶ 12} In their sole assignment of error, appellants assert that the trial court erred by dismissing their custody complaint.   In particular, appellants allege that the court incorrectly determined that their custody complaint constituted an improper collateral attack on the court's decision entered in the original custody action.   They contend that when they filed their custody complaint, the trial court had not issued a final judgment in the original custody action, and thus, that the collateral attack doctrine did not prevent them from filing a separate custody action.   Appellants additionally contend that the trial court did not afford them an opportunity to be heard in the original custody action and that the original custody determination therefore is not binding upon them.

A

STANDARD OF REVIEW

{¶ 13} Appellate courts review Civ.R. 12(B)(6) dismissals independently and without any deference to the trial court.[4]   *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio

---

[3]   On May 4, 2016, this court directed appellants to address our jurisdiction to hear the appeal because, as the order points out, the trial court's March 29, 2016 decision may not be a final appealable order.   Appellants subsequently responded that the trial court's March 3, 2016 constituted a final appealable order, but that their later-filed objections tolled the time to appeal until the trial court ruled on their objections.   A June 13, 2016 magistrate's order determined that we have jurisdiction over the appeal.

[4]   When appellee filed her motion to dismiss, she did not indicate which provision of Civ.R. 12(B) applied.   We will nevertheless construe her motion as a Civ.R. 12(B)(6) motion to dismiss for failing to state a claim upon which the court can grant relief.   *See generally Ohio Pyro, Inc. v. Ohio Dept. of Commerce,* 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶38 (determining that complaint failed to "state a valid claim" when it constituted "an impermissible collateral attack on a previous

St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶12, citing *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶5.

{¶ 14} "A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint." *Volbers–Klarich v. Middletown Mgt., Inc.,* 125 Ohio St.3d 494, 2010–Ohio–2057, 929 N.E.2d 434, ¶11.   In order for a court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.   *Ohio Bur. Of Workers' Comp. v. McKinley,* 130 Ohio St.3d 156, 2011–Ohio–4432, 956 N.E.2d 814, ¶12; *O'Brien v. Univ. Community Tenants Union, Inc.,* 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus; *Rose v. Cochran,* 4th Dist. Ross No. 11CA3243, 2012–Ohio–1729, ¶10.

{¶ 15} When a trial court considers a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must presume that all factual allegations contained in the complaint are true and must construe all reasonable inferences in favor of the nonmoving party.   *E.g., State ex rel. Talwar v. State Med. Bd. of Ohio,* 104 Ohio St.3d 290, 2004–Ohio–6410, 819 N.E.2d 654, ¶5; *Perez v. Cleveland,* 66 Ohio St.3d 397, 399, 613 N.E.2d 199 (1993).   Furthermore, a court that is reviewing a Civ.R. 12(B)(6) motion to dismiss "cannot rely on evidence or allegations outside the complaint."   *State ex rel. Fuqua v. Alexander,* 79 Ohio St.3d 206, 207, 680 N.E.2d 985 (1997).

{¶ 16} In the case sub judice, the trial court based its rulings on the motion to dismiss

judgment"); *Norman v. O'Brien*, 10th Dist. Franklin No. 16AP-191, 2016-Ohio-5499, 2016 WL 4440852 (reviewing trial court's dismissal of complaint on collateral attack ground pursuant to Civ.R. 12(B)(6)).

upon appellants' previous attempt to intervene in the original custody action. However, none of the documents from the original custody action are part of the record in appellants' subsequent custody action. Thus, the court necessarily relied upon evidence outside of the pleadings in ruling on appellee's motion to dismiss. While a trial court ordinarily errs when it considers matters outside of the pleadings when ruling on a Civ.R. 12(B)(6), courts have applied an exception when the outside evidence consists of court documents readily available online. *Draughon v. Jenkins*, 4th Dist. Ross No. 16CA3528, 2016-Ohio-5364, 2016 WL 4262984, ¶26, citing *State ex rel. Everhart v. McIntosh,* 115 Ohio St.3d 195, 2007–Ohio–4798, 974 N.E.2d 516, ¶8 and ¶10 (stating that court can take judicial notice of judicial opinions and public records accessible from the internet); *State ex rel. Scott v. Cleveland,* 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923, ¶26 (explaining that court can take judicial notice of appropriate matters in determining Civ.R. 12(B)(6) motion without converting it to a motion for summary judgment); *In re Helfrich,* 5th Dist. Licking No. 13CA20, 2014–Ohio–1933, ¶35. We therefore believe that the trial court appropriately considered court filings from the original custody action when it ruled on appellants' motion to dismiss, and that we likewise may consider them.

B

CUSTODY COMPLAINT

{¶ 17} We first observe that appellants, in theory, may certainly file a complaint that requests custody of the child. *In re Bonfield,* 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶42 (stating that juvenile court possesses jurisdiction to determine custody of any child not a ward of another court, even though petitioner not a parent); *In re J.R.A.,* 4th

Dist. Washington No. 13CA18, 2014-Ohio-4463, ¶28 (relating that "[n]onparents can bring custodial claims for children who are not wards of another court of this state under R.C. 2151.23(A)(2)"); *see also* Juv.R. 10(A) (stating that "[a]ny person may file a complaint to have determined the custody of a child not a ward of another court of this state"); R.C. 2151.23(A)(2) (providing that "[t]he juvenile court has exclusive original jurisdiction * * * to determine the custody of any child not a ward of another court of this state"); R.C. 2151.27(D) (explaining that "[a]ny person with standing under applicable law may file a complaint for the determination of any other matter over which the juvenile court is given jurisdiction"); *see generally Parker v. Jones*, 4th Dist. Ross No. 14CA3421, 2014-Ohio-3862, 2014 WL 4384692, ¶10 (observing that R.C. 2151.23(A)(2) ordinarily includes all custody disputes between parents and non-parents). However, the question in the case at bar is whether the original custody proceeding between the father and appellee prevents appellants from seeking custody through a separate action. In other words, does appellants' separate custody complaint under the specific circumstances present in this case constitute an improper collateral attack on the trial court's decision in the original custody action?

C

COLLATERAL ATTACK

{¶ 18} A collateral attack is "'an attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved.'" *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision,* 85 Ohio St.3d 609, 611, 710 N.E.2d 681 (1999), quoting *Kingsborough v. Tousley,* 56 Ohio St. 450, 458, 47 N.E. 541 (1897). More specifically, a "collateral attack" means

"[a]n attack on a judgment in a proceeding other than direct appeal; esp. an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective * * * ."

*Ohio Pyro, Inc. v. Ohio Dept. of Commerce,* 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶17, quoting Black's Law Dictionary (8th Ed.2004) 278; *see also Hall v. Tucker,* 161 Ohio App.3d 245, 2005-Ohio-2674, 829 N.E.2d 1259 (4th Dist.), ¶42, quoting 63 Ohio Jurisprudence 3d (2003) 285, Judgments, Section 471 ("'A "collateral attack" on a judgment may be defined as an attempt to avoid, defeat, or evade judgment, or to deny its force and effect, in some judicial proceeding not provided by law for the express purpose of reviewing it.'"). "In general, a collateral attack on a judgment is actually an attack on the *integrity* of the judgment. The merits of the previous judgment are not at issue in such a situation–only the fundamental validity of the previous judgment is at issue." *Ohio Pyro* at ¶25 (emphasis sic).

{¶ 19} "Collateral attacks on judgments conceivably can be mounted in either the court that issued the judgment or in a different court, as they involve any new 'proceeding' not encompassed within the proceeding in which the original judgment was entered." *Id.* at ¶20. However,

subject to only rare exceptions, direct attacks, i.e., appeals, by parties to the litigation, are the primary way that a civil judgment is challenged. For these reasons, it necessarily follows that collateral or indirect attacks are disfavored and that they will succeed only in certain very limited situations.

*Id.* at ¶22. Additionally, "the collateral-attack doctrine applies to both parties and nonparties." *Id.* at ¶35.

{¶ 20} Thus far, the Ohio Supreme Court has recognized two "very limited

exceptions" that permit a collateral attack: "when the issuing court lacked jurisdiction or when the order was the product of fraud (or of conduct in the nature of fraud)." *Id.* at ¶23. "[I]n the absence of those [two] fundamental deficiencies, a judgment is considered 'valid' (even if it might perhaps have been flawed in its resolution of the merits of the case) and is generally not subject to collateral attack." *Id.* at ¶25.

{¶ 21} In *Ohio Pyro*, the court determined that Ohio Pyro could not collaterally attack a prior judgment in which it had unsuccessfully sought to intervene. In the first action, Safety 4th filed a complaint against the State Fire Marshal. The dispute involved "a moratorium on requests for the issuance of wholesaler licenses." *Id.* at ¶3. Safety 4th's complaint requested a declaratory judgment that it "was entitled to relocate licenses" and that certain amendments violated the one-subject rule. *Id.* at ¶4. Safety 4th additionally sought "a writ of mandamus to compel the Fire Marshal to approve the relocations." *Id.*

{¶ 22} Ohio Pyro and several other entities unsuccessfully attempted to intervene. Ohio Pyro requested intervention in order to assert that "moratorium restrictions applied to Safety 4th's application." *Id.* at ¶5. Ohio Pyro did not, however, appeal the court's decision denying its motion to intervene. Safety 4th and the Fire Marshal eventually settled the matter.

{¶ 23} Approximately three years later, Ohio Pyro filed a complaint that sought injunctive relief to prevent the Fire Marshal from approving Safety 4th's relocation. Ohio Pyro claimed that in the settlement agreement between Safety 4th and the Fire Marshal, the Fire Marshal "'agreed to perform acts that are outside of his statutory authority' and that 'contravene the express intent of Ohio's legislature.'" *Id.* at ¶9.

{¶ 24} The Fire Marshal and Safety 4th subsequently filed motions to dismiss and contended that Ohio Pyro's complaint "conflicted with, and constituted an impermissible collateral attack on, the" prior judgment. *Id.* at ¶12. The trial court denied the motions to dismiss and later granted Ohio Pyro its requested relief. The Fire Marshal and Safety 4th appealed, and the appellate court affirmed the trial court's judgment.

{¶ 25} On further appeal, the Ohio Supreme Court determined that Ohio Pyro's complaint constituted an improper collateral attack on the prior judgment entered in the action between the Fire Marshal and Safety 4th. The court initially determined that the prior judgment entered in the action between the Fire Marshal and Safety 4th was "entitled to the presumption of finality that the doctrine disfavoring collateral attacks affords to a valid judgment." *Id.* at ¶24. The court determined:

> "Ohio Pyro's action can be characterized no other way than as an impermissible collateral attack on the [prior] judgment * * *. The [prior] judgment ordered the Fire Marshal to allow Safety 4th to relocate its licenses, including the relocation of the license at issue in this case * * *, provided all conditions for relocation were met. By asserting that the Fire Marshal should not be permitted to approve Safety 4th's relocation * * *, Ohio Pyro seeks its own relief that directly conflicts with the terms of the [prior] judgment."

*Id.* at ¶26.

{¶ 26} The court also concluded that Ohio Pyro's action "is not the rare case in which exceptional circumstances are present that justify the allowance of a collateral attack on a previous judgment in a court different from the one that issued the judgment." *Id.* at ¶30. In reaching this conclusion, the court examined the interests Ohio Pyro sought to vindicate. The court determined that Ohio Pyro sought to vindicate "economic interests" and that those interests "are incapable of supporting its efforts to attack the [prior] judgment." *Id.* at ¶29.

The court thus determined that "the principles disfavoring collateral attacks fully apply to Ohio Pyro's attempts in this case."   *Id.* at ¶35.

{¶ 27} The court additionally found the circumstances surrounding Ohio Pyro's attempt to intervene in the prior action "irrelevant" to its ability to collaterally attack the prior judgment.   The court explained:

> Intervention provided Ohio Pyro with a potential opportunity to interject its interests into the [prior] case, but whether Ohio Pyro successfully asserted those interests at that time is not relevant to its ability to launch the instant collateral attack.   Therefore, it is irrelevant to our discussion that Ohio Pyro did not appeal from the denial of its motion to intervene in that previous case, and it further does not matter for our purposes whether the trial court's decision to deny intervention was a final, appealable order.

*Id.* at ¶36.

{¶ 28} The court ultimately held "that a collateral attack on a judgment issued by a different court in a civil case will succeed only when the first ruling was issued without jurisdiction or was the product of fraudulent conduct."   *Id.* at ¶37.   The court determined that Ohio Pyro could not collaterally attack the prior judgment when its complaint did not "challenge the fundamental validity of the [prior] judgment" and when "it assert[ed] interests that are insufficient as a matter of law to overrule the [prior] judgment."   *Id.*   The court concluded that Ohio Pyro did not have "standing to seek judicial enforcement of the rights it asserts."   *Id.*   The court thus reversed the appellate court's judgment and remanded the matter to the trial court with a direction to enter a judgment dismissing Ohio Pyro's complaint.

{¶ 29} In the case at bar,      we do not believe that appellants' custody complaint can be characterized any other way than as an impermissible collateral attack on the court's

decision in the original custody action (in which appellants sought to intervene, but were dismissed from the action). Appellants' complaint, like Ohio Pyro's, does not "challenge the fundamental validity of the [prior] judgment." Appellants have not alleged that the prior custody decision is fraudulent or that the court lacked jurisdiction to enter a custody order. The prior decision is therefore entitled to a presumption of validity. Additionally, appellants' custody complaint seeks the same relief they previously sought in the original custody action. The relief they request (custody of the child) directly conflicts with the relief that the court granted in the original custody action (the child placed in appellee's custody).

{¶ 30} Moreover, appellants have not argued that their interests are sufficient to overrule the prior custody decision. *See Ohio Pyro* at ¶37 (noting that Ohio Pyro "assert[ed] interests that are insufficient as a matter of law to overrule the [prior] judgment"). Although *Ohio Pyro* seems to leave open the possibility that a party may collaterally attack a judgment when the party's interests are not "insufficient," *Ohio Pyro* does not explain what interests might constitute sufficient interests. Instead, *Ohio Pyro* merely indicates that economic interests are insufficient to permit a collateral attack on a prior judgment.

{¶ 31} In the case sub judice, appellants' complaint does not seek to vindicate economic interests, but instead, their private interest in obtaining custody of their niece. Simply because appellants may have a right to file a custody complaint[5] does not mean that they possess sufficient interests, within the meaning of *Ohio Pyro*, to overrule the prior custody decision. We thus believe that appellants' custody complaint is an attempt to

---

[5] See *Bonfield* and *J.R.A., supra.*

challenge the integrity of the prior decision that placed the child in appellee's custody, and that none of the exceptions *Ohio Pyro* recognized apply. Appellants have not shown that their custody complaint is "the rare case in which exceptional circumstances are present that justify the allowance of a collateral attack." *Id.* at ¶30. Consequently, we believe that appellants' complaint constitutes an impermissible collateral attack on the prior custody decision.

{¶ 32} We recognize appellants' assertion that when they filed their complaint, the trial court had not issued a final decision concerning the child's custody and that the collateral attack doctrine should not apply. We further observe, however, that after appellants filed their notice of appeal, the trial court entered what appears to be a final order and placed the child in appellee's legal custody. We do not believe that we should ignore this subsequent judgment when determining whether the collateral attack doctrine bars appellants' custody complaint. *See generally State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis,* 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶8 ("An event that causes a case to become moot may be proved by extrinsic evidence outside the record").

{¶ 33} If, hypothetically, we reversed the trial court's decision on the basis that the collateral attack doctrine does not apply, then appellants' custody action would move forward. To permit appellants to proceed with their custody action, now that the trial court has entered a final custody decision in the original action, would permit appellants to collaterally attack that decision. The court has entered a final custody order that placed the

child in appellee's legal custody.[6]  Essentially, the trial court's later final order that placed the child in appellee's legal custody renders ineffective any relief we could otherwise grant appellants.   Thus, in the case sub judice, to determine whether the collateral attack doctrine applies to a temporary custody order is an issue that we need not decide.  *Miner v. Witt,* 82 Ohio St. 237, 92 N.E. 21 (1910), syllabus ("It is not the duty of the court to answer moot questions, and when pending proceedings * * *, an event occurs, without the fault of either party, which renders it impossible for the court to grant any relief, it will dismiss the petition * * *."); *accord Cincinnati Gas & Elec. Co. v. Pub. Util. Comm. of Ohio,* 103 Ohio St.3d 398, 2004-Ohio-5466, 816 N.E.2d 238, ¶15 (stating that "an appellate court need not consider an issue, and will dismiss the appeal, when the court becomes aware of an event that has rendered the issue moot"); *Tschantz v. Ferguson,* 57 Ohio St.3d 131, 133, 566 N.E.2d 655 (1991) (explaining that "[n]o actual controversy exists where a case had been rendered moot by an outside event"); *Schwab v. Lattimore,* 166 Ohio App.3d 12, 2006-Ohio-1372, 848 N.E.2d 912, ¶ 10 (1st Dist.) ("The duty of a court of appeals is to decide controversies between parties by a judgment that can be carried into effect").

{¶ 34} Appellee further asserts that R.C. 3127.05 prevents appellants from

---

[6] We point out that the collateral attack doctrine would not appear to prevent a party from seeking a future modification at some point if the facts and circumstances warranted such action.   When a party seeks a modification of custody, the party does not attack the integrity of the original custody determination.   Instead, a party must show, based upon facts that have arisen since the original custody determination or upon facts that were unknown at the time of the original determination, that a change in custody is warranted.   In the case sub judice, however, appellants' custody complaint attacks the integrity of the prior custody decision and does not assert any new facts that might be sufficient to permit further consideration.   We, of course, express no opinion on the merits of this issue, or whether appellants might seek to later modify the court's decision to place the child in appellee's legal custody.

challenging the trial court's custody determination.   R.C. 3127.05 states:

> A child custody determination made by a court * * * binds all persons who * * * have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard.  As to those persons, the determination is conclusive as to all decided issues of law and fact except to the extent the determination is modified.

{¶ 35} We do not find it necessary to determine whether this statute, contained within the Uniform Child Custody Jurisdiction and Enforcement Act,[7] applies to proceedings pending within the same juvenile court.   Instead, we believe that our collateral-attack analysis fully disposes of this appeal.

{¶ 36} Accordingly, based upon the foregoing reasons, we overrule appellants' sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

---

[7] The UCCJEA's basic purpose is to resolve jurisdictional conflicts that occur in interstate custody disputes.   *See generally Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.